**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERT M. HILTON, | ) | CASE NO: 5:19-CV-1390 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN, BRANDESHAWN HARRIS, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Respondent. | ) | |

### I.    Introduction

Petitioner, Albert Hilton, an Ohio prisoner who is currently serving an aggregate prison term of eight years for violation of a protection order and failure to comply with order or signal of police officer, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 28, 2019. Respondent, Warden Brandeshawn Harris, filed a return of writ on September 18, 2019. (ECF No. 6). On September 14, 2020, the Court established a final deadline of October 20, 2020, for Hilton to file a traverse and warned that should he fail to provide the writ, the Court would proceed to consider the writ. (ECF No. 7). As of the date of this Report and Recommendation, Hilton has not filed a traverse.

This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Hilton's petition and other case-dispositive motions. Because Hilton's petition was not filed within the one-year limitations period under 28 U.S.C. § 2244(d)(1) and because Hilton is not entitled to equitable tolling, I recommend that the Court DISMISS Hilton's petition.

### II.    Procedural History

#### A.    State Conviction

1

On January 23, 2015, a Portage County, Ohio grand jury indicted Hilton on one count of failure to comply with order or signal of police officer. (ECF No. 6-1 at Ex. 7). On May 7, 2015, a Portage County, Ohio grand jury indicted Hilton on two count of domestic violence, in violation of Ohio Rev. Code § 2919.25 (Counts 1-2). On June 17, 2015, a jury found Hilton guilty of failure to comply with order or signal of police officer. (ECF No. 6-1 at Ex. 9). On June 26, 2015, the grand jury issued an amended and supplemental indictment additionally charging Hilton with one count felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count 3), five counts of violating a protection order, in violation of Ohio Rev. Code § 2919.27 (Counts 4-8), and one count intimidation of a witness, in violation of Ohio Rev. Code § 2921.04(B) (Count 9). (ECF No. 6-1 at Exs. 1, 3). On June 24, 2015, a jury found Hilton not guilty on two counts of domestic violence and guilty on five counts of violation of a protective order. The jury was unable to reach a verdict on the felonious assault charge. (ECF No. 6-1 at Ex. 5). On July 27, 2015, the court conducted a sentencing hearing and sentenced Hilton to an aggregate sentence of eight years for his failure to comply with order or signal of police officer and violation of a protection order convictions. (ECF No. 6-1 at Ex. 9).

### B. Direct Appeal

On August 28, 2015, Hilton, then represented by counsel, directly appealed. (ECF No. 6-1 at Ex. 9). Hilton raised the following assignments of error:

> **Assignment of Error I:** The State failed to present sufficient evidence to support the offense of violating a protection order and the jury's verdicts, Appellants' [sic] convictions as a matter of law and/or was the jury's verdicts against the manifest weight of the evidence. (T.d. ??,??) [sic]
>
> **Assignment of Error II:** The trial court erred in overruling Appellants' [sic] Crim.R. 29 motions for acquittal; as originally made and renewed.

2

(ECF No. 6-1 at Ex. 11). On December 19, 2016, the Ohio Court of Appeals affirmed Hilton's convictions and sentence. (ECF No. 6-1 at Ex. 13). The court of appeals held that Hilton's convictions were supported by sufficient evidence and not against the manifest weight of the evidence and "thus the trial court did not err in overruling [his] Crim.R. 29 motions." (ECF No. 6-1 at Ex. 13). Hilton did not appeal to the Ohio Supreme Court.

### C. Application to Reopen Direct Appeal

On March 20, 2017, Hilton, filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. Rule 26(B), alleging that his appellate counsel was ineffective for failing to raise the following arguments on appeal:

> **Assignment of Error I:** The trial court erred to the prejudice of appellant by imposing consecutive sentences when the trial record does not support the findings.
>
> **Assignment of Error II:** The trial court erred to the prejudice of appellant in imposing consecutive sentences for allied offenses of similar import.
>
> **Assignment of Error III:** Appellant was denied effective assistance of trial counsel.

(ECF No. 6-1 at Ex. 14). The Ohio Court of Appeals denied the application on July 24, 2017. (ECF No. 6-1 at Ex. 15). Hilton did not appeal to the Ohio Supreme Court. On February 27, 2018, Hilton, *pro se*, filed an application for reconsideration. (ECF No. 6-1 at Ex. 16). On April 5, 2018, the Ohio Court of Appeals overruled Hilton's application for reconsideration finding that it was essentially a second application for reopening his direct appeal and that he had no right to file a successive application for reopening his direct appeal. (ECF No. 6-1 at Ex. 17). On May 16, 2018, Hilton, *pro se* filed a notice of appeal with the Ohio Supreme Court of the appellate court's April 5, 2018 judgment entry on his application for reconsideration. (ECF No. 6-1 at 18). Hilton raised the following propositions of law:

> **Proposition of Law I:** The trial court erred by sentencing Appellant separately on two counts of violating a protection order, the basis of which was back-to-back phonecalls placed from the county jail; thus denying his

> protection against Double Jeopardy and his right to Due Process as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section [sic] § 10 of the Ohio Constitution.
>
> **Proposition of Law II:** Appellant was denied his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section [sic] § 10 of the Ohio Constitution when the trial court utilized findings not supported by the record in support of imposing consecutive sentences pursuant to R.C. 2929.14(C)(4).
>
> **Proposition of Law III:** Appellant was denied his Due Process Protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section [sic] § 10 of the Ohio Constitution when the Eleventh District Court of Appeals misclassified his App.R. 26(A) Application for Reconsideration as a second App.R. 26(B) Application for Reopening and failed to rule on the merits of it.

(ECF No. 6-1 at Ex. 19). On July 11, 2018, the Ohio Supreme Court declined to accept jurisdiction.

(ECF No. 6-1 at 21).

### III. Federal Habeas Corpus Petition

On June 13, 2019[1], Hilton *pro se* petitioned for a writ of habeas corpus from this court.

(ECF No. 1). Hilton's petition asserted the following grounds for relief:

> **Ground One:** The trial court erred by sentencing Petitioner separately on two counts of violating a protection order, and not merging them as allied offenses, denying Petitioner's protection against Double Jeopardy and his right to Due Process as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution.
>
> **Supporting Facts:** While awaiting trial in Criminal Case No. 2015 CR 00325, a protection order was filed on May 11, 2015, prohibiting Petitioner from having contact with his girlfriend, Carol Anderla, the alleged victim. While in county jail still awaiting trial, Hilton placed five phone calls to Ms. Anderla, the first three of which occurred on May 13, May 14, and May 15, 2015. The last two phone calls occurred at 6:19 p.m. and 6:39 p.m. on May 28, 2015. The

---

[1] Hilton certified on his petition that it was placed into the prison mail system on February 28, 2019. Typically, a prisoner's filing is deemed filed on the day it is placed in the prison mail system pursuant to the prison mailbox rule. However, here, Hilton's petition was not postmarked until June 13, 2019 and was not received by the Court until June 17, 2019. Due to this large gap in time, the Court finds it unlikely that Hilton's letter was placed into the prison mailbox system on February 28, 2019 as he claims. Thus, the Court finds that Hilton's petition was filed on June 13, 2019—the day it was postmarked. Even using the February 28, 2019 date, the court's analysis and conclusion would remain the same as it would still be untimely.

first of these May 28th calls was automatically terminated by the jail's phone system, at which point Hilton immediately called back to Ms. Anderla to continue the conversation that had been interrupted by the termination of the first call. On June 26, an amended indictment was filed charging Petitioner with five separate counts of violating a protection order pursuant to O.R.C. 2919.27 – one count for each phone call.

**Ground Two:** The Petitioner was denied his Due Process protections under the Fourteenth Amendment to the U.S. Constitution when the trial court utilized findings not supported by the record in support of imposing consecutive sentences.

**Supporting Facts:** Petitioner was originally charged in Criminal Case No. 2015 CR 00325 with two counts of domestic violence, and one count each of felonious assault and intimidation off a crime victim or witness – all against his girlfriend, Carol Anderla. It was based upon those charges that authorities, not Ms. Anderla herself, filed a protection order, which Petitioner later violated, as detailed in Ground One. At trial, the jury only found Petitioner guilty of the five counts of violating a protection order. The jury either found him not guilty or was unable to reach a verdict on all of the remaining counts. At sentencing, in support of imposing consecutive sentencing, the trial court stated the following: "All I can do is deal with the charges that I have in front of me, which are the five counts of violating a protection order. And, again, after having considered...you conduct associated with these charges that the jury did find you guilty of, I don't think for one minuet that you were calling Carol to really see how she was. I think you were calling her to make sure you got out of this. You didn't call her and say I'm sorry, for beating the crap out of you...I am going to specifically find that these offenses, these five violating a protection order were a course of conduct, based upon the physical harm that she received initially."

**Ground Three:** The Petitioner was denied his Due Process protections under the Fourteenth Amendment to the U.S. Constitution when the Eleventh District Court of Appeals misclassified his App.R. 26(A) application for reconsideration as a second App.R. 26(B) application for reopening, and failed to rule upon the merits of it."

**Supporting Facts:** After Petitioner's App.R. 26(B) application for reopening was denied by the Eleventh District Court of Appeals, he filed an App.R. (A) application for reconsideration, which asked the appellate court to reconsider its denial of his claims raised in the application for reopening. The appellate court denied the App.R. 26(A) application for reconsideration, claiming it was "essentially a second application for reopening as he sets forth arguments again that his appellate counsel was ineffective and specifically prays that we grant his application for reopening. Appellant has already raised a claim of ineffective assistance of counsel in his prior pro se application for reopening, which we overruled on July 24, 2017."

(ECF No. 1). On September 18, 2019, Warden Harris filed a return of writ. (ECF No. 6).

5

## IV. Law and Analysis

### A. Statute of Limitations under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A conviction becomes final under § 2244(d)(1)(A) when direct review concludes, not when the petitioner has exhausted all state remedies. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000) (noting that the one-year limitations period under § 2244(d)(1)(A) does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court). A judgment is final when the time to file a direct appeal to the state appellate court expires, unless the state appellate court grants a motion to file an out-of-time appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). An Ohio criminal defendant has 45 days from the entry of judgment being appealed to file a timely appeal to the Ohio Supreme Court. Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i). The one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (holding that

a motion to reopen under Ohio R. App. P. 26(B) is a collateral proceeding). A post-conviction relief petition is considered "properly filed" only if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (a petition is "properly filed" for § 2244(d)(2) purposes "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."); *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "[T]ime limits, no matter their form, are 'filing' conditions." *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Untimely post-conviction petitions or other collateral motions do not toll the AEDPA statute of limitations, despite any exceptions to the timely filing requirement that might exist under state law. *See id.* at 413-14.

### B. Untimely Petition

The Warden argues that Hilton's AEDPA statute of limitations began running on February 4, 2017, and that he is not entitled to any statutory tolling because he did raise his claims on direct appeal and has not asserted any "reasonable circumstances outside of his control explaining his why he failed to timely file his petition." (ECF No. 6 at 11-15). Hilton does not address the untimeliness of his appeal.

Hilton's judgment became final on February 3, 2017—upon the expiration of the 45 days from the December 19, 2016 judgment of entry of Hilton's direct appeal. Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i). Thus, Hilton's statute of limitations began running on February 4, 2017. However, Hilton properly filed a timely application to reopen his direct appeal pursuant to Ohio App. Rule 26 (B) on March 20, 2017. (ECF No. 6-1 Ex. 14). As a result, Hilton's statute of limitations was tolled from March 20, 2017 through July 24, 2017—during the pendency of his application to reopen his direct appeal.

Hilton did not seek an appeal of the appellate court's denial of his application to reopen his direct appeal. Rather, he filed a motion for reconsideration. The Ohio Court of Appeals construed Hilton's motion as a successive application to reopen his direct appeal. (ECF No. 6-1 Ex. 17). Hilton argues that the Ohio Court of Appeals misconstrued his motion and that he should have been treated as a motion for reconsideration. The court need not decide this issue because whether Hilton's motion properly treated as a second application to reopen his direct appeal or should have been treated as a motion for reconsideration is of no consequence to the court's analysis in this matter because either way it was not "properly filed" for purposes of § 2244(d)(2).

If the Hilton's motion was appropriately considered a second application to reopen his direct appeal, then it cannot be considered "properly filed" because the Ohio Court of Appeals overruled the application and did not review it on the merits because there is no right to file a successive application under Ohio law. *State v. Cheren*, 73 Ohio St. 3d 137, 138 (1995) ("[A] prisoner has no right to file successive applications for reopening. Once ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation."). If Hilton's motion should have been considered a motion for reconsideration as he contends, it cannot be considered "properly filed" because it was untimely. Under Ohio law, an "[a]pplication for reconsideration of any cause or motion submitted on appeal shall be made in writing no later than ten days after the clerk has both mailed to the parties the judgment or order in question and made a note on the docket of the mailing as required by App. R. 30(A)."

Here, the Ohio Court of Appeals mailed the judgment from Hilton's application to reopen his appeal and made note on the docket on July 24, 2017. (ECF No. 6-1 at Ex. 25). Yet, Hilton did not file his motion for reconsideration until February 27, 2018—7 months after the 10-day deadline. Therefore, because Hilton's motion for reconsideration was untimely and because he is

8

not entitled to file a successive application to reopen his appeal, no matter how his motion is construed it cannot be considered properly filed. Thus, Hilton's limitations period resumed running on July 25, 2017—the day after the judgment of his motion to reopen his direct appeal and expired on June 11, 2018[2]—321[3] days later. Hilton filed the instant petition on June 13, 2019, a year after the AEDPA statute of limitations expired.

### C. Equitable Tolling

However, this does not end the inquiry, the court must now consider whether Hilton is entitled to equitable tolling. Because AEDPA's statute of limitations is not jurisdictional, it is subject to equitable tolling. *Holland v. Florida*, 560 U.S 631, 645 (2010). If a petitioner seeks equitable tolling, he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). The unavailability of or delay in receiving trial or other transcripts is not an "extraordinary circumstance" that prevents a habeas petitioner from filing a timely petition, and, thus, does not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750-51 (6th Cir. 2011) (explaining that the habeas rules require the state, not the petitioner, to "furnish the petitioner with the record once a habeas petition has been filed"). Similarly, a petitioner's *pro se* status or ignorance of procedural requirements "are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Keeling v. Warden,*

---

[2] The Warden calculates this expiration date as June 10, 2018. However, even if that calculation were correct, the expiration date would still be June 11, 2018 because June 10, 2018 was a Sunday.

[3] Hilton's one-year statute of limitations began running on February 4, 2017 through March 20, 2017—44 days. Thus, when the one-year statute of limitations resumed running on July 25, 2017, there were 321 days left.

*Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (citing *Hall*, 662 F.3d at 751–52; *Winkfield v. Bagley,* 66 F. App'x 578, 583 (6th Cir. 2003)).

The Warden argues that Hilton not entitled to equitable tolling because he was not diligent in pursuing state court relief and has asserted no reasonable circumstances outside of his control to explain his failure to timely file his petition. (ECF No. 6 at 14-15). The court agrees. Hilton failed his petition a year late and does not provide any excuse for his delay. Hilton has not demonstrated an extraordinary circumstance that stood in his way and prevented him from timely filing his petition. Accordingly, because equitable tolling does not apply, I recommend that Hilton's petition be dismissed as untimely.

### V. Certificate of Appealability

#### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

#### B. Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485. As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486. If the Court accepts my recommendations, Hilton will not be able to show that the Court's conclusion that his petition was untimely under 28 U.S.C. § 2244(d)(1) is debatable. Thus, I recommend that a certificate of appealability not be issued.

## VI.     Recommendation

Because Hilton's petition was not filed within the one-year limitations period under 28 U.S.C. § 2244(d)(1) and because Hilton is not entitled to equitable tolling, I recommend that the Court DISMISS Hilton's petition for writ of habeas corpus (ECF No. 1). I further recommend that Hilton not be granted a certificate of appealability.

DATED:  December 14, 2020

    *Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

11